*1064 On Rehearing,
Spencer, J.
The questions presented and to be determined by us on this rehearing we will consider seriatim.
First — Is the pledgee oí a note the agent and mandatary of the owner, and in case he buys property mortgaged to secure the note for a less sum than the amount of the note, and immediately resells it for a greater sum than the note, what is the measure of his responsibility to the owner ? Is he bound to account only for the price at which he purchases; or at the price at which he sells; or is he liable only for the amount of the note ?
Although for the purposes of collection the pledgee is considered to have the legal title of the note pledged, still he is not really the owner of it. Art. 3166 C. C. declares that the debtor “ remains proprietor of the pledge, which is in the hands of the creditor only as a deposit to secure his privilege on it.” This is made manitest also by the undoubted rule that when there is no fault or negligence in the pledgee the loss of the pledge, or deterioration of its value, by insolvency, etc., must be borne by the pledgor. 1 An. 344.
The obligations of a pledgee are in substance very similar to those of mandataries and agents. In 17 Barbour, 492, the Supreme Court of New York say that “ a creditor holds collateral securities as the agent and trustee of his debtor.” In Moses vs. Murgatroyd, 1 John. Ch. 119, Chancellor Kent said: “These collateral securities are in the nature of trusts, created for the better protection of the debt.” In 1 An. 344, our own court assimilate the responsibilities of pledgees of notes to those of agents, and a similar doctrine is held in “ King vs. Harman,” 6 La. 607.
We think, therefore, that Mann, in the enforcement and collection of the mortgage notes placed in his hands as collaterals, was the agent or trustee of Mrs. Richardson, and is not permitted to speculate, to her prejudice, upon the thing pledged.
Mr. Story on “ Agency,” sec. 207, says: “Indeed, this doctrine is so firmly established upon principles of public policy that no agent will be permitted to take * * any profits incidentally obtained in the execution of his duty, even if it be sanctioned by usage. Such a usage has been severely stigmatized as a usage of fraud and plunder.”
Perry on Trusts, $ 427, says: “ Trustees hold a position of trust and confilence. The legal title of the trust property is in them, and generally its whole management and control is in their hands. At the same time the beneficiaries of the trust may be women or children, or persons incompetent to protect their own interests. For these reasons, to protect the weak and helpless on 'the one hand, and to prevent trustees *1065 ■from using their position and influence for their own gain, and to prevent them from hazarding the trust property upon what they may think ■to be profitable speculations on the other, they are not allowed to make any profit from their office. They can not use the trust property, nor "their relations to it, for their own personal advantage. All the power -and influence which the possession of the trust fund gives must be used for the advantage and profit of the beneficial owners, and hot for the personal gain and emolument of the trustee. No other rule would be ¡safe; nor would it be possible for courts to apply any other rule as between trustee and cestui que trust. * * * * *
“ A trustee, executor, or assignee can not buy up a debt or incumbrance to which the trust estate is liable for less than is actually due "thereon and make a profit to himself: but such purchase inures for the benefit of the trust estate, and the creditors, legatees, and cestui que trust shall have all the advantages of such purchase. * * *
“ So, if a trustee buys the trust property at private sale or public ¡auction, he takes it subject to the right of the cestui que trust to have ■the sale set aside or to claim all the benefits and profits of the sale for himself. * ****** *
“By this rule, trustees may be liable to great losses, while they can receive no profit; and the rule is made thus stringent that trustees may ■not be tempted from selfish motives to embark the trust fund upon the •chances of trade and speculation. If a trustee charge a bonus in his ¡account for his skill and services in conducting the business of the trust, it will be set aside. * * * * * *
“All persons who stand in a fiduciary relation to others must ¡account for all the profits made upon moneys in their hands by reason of such relation. * * * * * * * *
“Agents, guardians, directors of corporations, officers of municipal •corporations, and all oilier pei'sons clothed with a fiduciary character, are ¡subject to this rule.”
In his work on Bailments Mr. Story says, § 343 :
“Another duty of the pawnee at the common law is to render a clue account of all the income, profits, and advantages derived by him from "the pledge in all cases where such an account is within the scope of the bailment. If, for instance, the pawn is a slave, the profits of his labor ¡are to be accounted for. If the pawn consists of cows, horses, or other •cattle, the profits of their labor are also to be accounted for, if within the contemplation of the parties. The Boman and foreign law seem, in ¡all cases of this sort, to imply an obligation to account, from the very mature of such a pledge. In rendering an account of the profits, the pawnee is at liberty to charge all the necessary costs and expenses ■to which he has been put, and to deduct them from the income or profits. *1066 If he has sold the pledge he is bound to account for the proceeds, and to pay over to the pawner the surplus beyond his debt or other demand, and the necessary expenses and charges. Pothier thinks that the duty of the pawnee goes further; and that ho is bound to account for all the profits and income which he might have received from the pledge but for his own negligence.”
See, also, Gibson vs. Hunter, 14 La. 124.
But in the case before us the total mortgage debt bearing on the-property amounted to only $8800, of which $5866 67 was held by Mrs. Richardson, and $2933 33 by Willis Forrester. The property was bought in by four persons jointly, and, so far as appears, equally, to wit: Moses Mann, Max Fischer, August Fischer, and Willis Forrester; and these four made a joint deed without assignation of parts to Walsh for ten-thousand dollars, one half cash, and the balance at one and two years with eight per cent interest from date, and attorney’s fees, and secured by mortgage and vendor’s lien. We think this equivalent to a cash sale-at $10,000. But we see no reason why we should allow Mrs. Richardson more than the amount of her notes. We do not think the agent’s responsibility should go beyond that. If he realizes the full amount of the notes, there is no speculation at her expense or to her loss. We think that under the circumstances of this case, when the property was bought in for $8200 and on same day and at same place resold for ten thousand dollars cash, or its equivalent, the agent should not be permitted to profit by the resale, except to the extent that there is excess over the amount due the pledger. But we can not require the agent to pay more than he realized. As we have seen, Mann was only one of four purchasers, and realized therefore by the resale only one fourth of $1800’ as profit — say $450. This suit is against Mann only, and we can not hold him responsible for the profits made by his copurchasers, who are no parties to this suit, and, for aught that appears, in nowise the agents or trustees of Mrs. Richardson, or in any wise accountable to her for any profits realized by them. She declares upon her contract with Mann only, of date February 4,1875. It is that which she seeks to enforce in her orioinal petition ; while in the amended petition she simply alleges a-conspiracy to prevent bidding at the sale, and consequent injury. She does not ask any where specifically the relief sought on this rehearing;but as the evidence showing the relations between herself and Mann is before us without objection, and there is a prayer fora judgment of $1500 and “for general relief,” we think we can allow her a judgment for the amount realized by Mann as profits on resale. As we have seen, Mann realized a profit of $450. Giving Mrs. Richardson the benefit of the $500 retained by the sheriff, she would still owe defendant $1 42 after crediting her with her pro rata of the $8200, less costs.
*1067 Her pro rata was, after deducting costs, - - - - $4842 87
Her debt to defendant was - -- -- -- -- 4844 29
Leaving balance due by her.......$ 142
Which being deducted from - -- -- -- -- 450 00
Leaves due by Mann - -- -- -- -- -$ 448 58
But should the $500 retained by. the sheriff on oppositions or any part thereof be decreed to go to the claimants (opponents), then her pro^ rata, to wit, two thirds of these $500, or of such part thereof as may be decreed to said opponents, must be deducted from the above sum of $448 58.
It is therefore ordered and decreed that our former decree be set aside, and it is now ordered that plaintiff, Mrs. Richardson, (for use of' McGehee, Snowden & Yiolet, subrogees,) do recover of Moses Mann-the sum of $448 58, with legal interest from April 3,1876, till paid, subject to a credit of same date for two thirds of such sum as shall be-awarded out of the $500 retained as aforesaid to said opponents.
It is further ordered that this cause be remanded, for the purpose solely of ascertaining the amount of said credit, and that this judgment be not executed so far as it would be affected by said credit until the saméis ascertained.
It is further ordered that plaintiff and appellee pay costs of this-appeal, and defendant those of the court below.